COBB, Judge.
Gooding’s Supermarkets, Inc., plaintiff below, appeals from a final judgment in a declaratory action. Net Realty Holding Trust, defendant below, cross appeals.
Net Realty owns a shopping center. Gooding’s is one of Net’s tenants. Under the terms of the written lease, Net is to maintain the common area and indemnify Gooding’s from “all claims, losses, damages and expenses ... arising out of the Common Area.” Net further agreed in paragraph 15 to maintain “liability insurance over the Common Area with a combined bodily injury, death and property damage limit of $1,000,000 or more per occurrence.”
Gooding’s and Net were sued when a patron of the supermarket suffered injuries in the parking lot area caused by a fire ant infestation. Despite repeated requests from Gooding’s, Net and its insurer refused to provide a defense to or indemnify Gooding’s in connection with the claim.
The tort claim was ultimately settled. Gooding’s then sued Net seeking a declaratory decree to the effect that Net breached the lease and that Gooding’s has the right to terminate the lease. Gooding’s further sought contractual indemnification for sums expended in its defense and settlement of the tort claim.
We affirm the trial court’s ruling that Net breached the lease agreement by not providing Gooding’s with liability insurance as contemplated by paragraph 15 of the lease.[1] We also affirm the court’s ruling that Gooding’s is entitled to recover damages of $7,200 representing the costs incurred by Gooding’s in its defense and settlement of the tort claim. See Bovis v. 7-Eleven, Inc., 505 So.2d 661 (Fla. 5th DCA 1987).
However, we reverse the trial court’s ruling that Gooding’s could not terminate the lease because it failed to provide adequate notice. The lease provides in relevant part:
Landlord warrants that to the best of its knowledge (i) there is no lawsuit, claim, condemnation, judgment, order or ruling threatened or pending against the Shopping center [nor is the Shopping Center located on an area wherein hazardous wastes or other materials are or have been stored] as of this date, (ii) all real estate taxes and assessments levied against the Shopping Center shall be fully paid, (iii) it has the lawful right and title to make the Lease, (iv) Tenant shall quietly and peacefully enjoy the Demised Premises and Common Area, together with all rights, privileges and appurtenances thereunto appertaining, free and clear of any hindrance or molestation and (v) it owns or will own prior to commencing construction, fee simple title to the Shopping Center, free and clear of all liens, easements, restrictions and other encumbrances. In the event that Landlord breaches, and Landlord shall not be able to remedy such breach within a reasonable time, Tenant shall be entitled to terminate the Lease in addition to all remedies available at law and equity.
* 5£ ‡ ‡ ‡ ‡
Paragraph 21 further addresses defaults by the landlord:
In the event that Landlord is in default of the Lease, Tenant, without liability, shall be entitled to cure same and deduct the reasonable cost thereof, together with any claims, damages and expenses of Tenant including without limitation, reasonable attorneys’ fees, as a result thereof, against Rental, Percentage Payment or any other sums payable by Tenant under the Lease in addition to all remedies available at law or in equity, provided that it shall famish Landlord and any mortgagee of Landlord, the name and address of which Tenant previously has been furnished notice, prior notice and permit same to cure the default *1138 within thirty (30) days thereafter, and further provided that Tenant shall not be obligated to furnish Landlord and any Mortgagee notice and an opportunity to cure a default in the case of an emergency situation.
* * * * * *
Notice to Mortgagee. Anything in this lease to the contrary notwithstanding, Tenant agrees that it mil not terminate this lease or withhold any rentals due hereunder because of Landlord’s default in performance hereof until Tenant has first given written notice as herein stipulated to Landlord and to the holder of any first mortgage (provided Tenant has first been notified in writing of the name and address of the holder of said first mortgage) specifying the nature of the default by Landlord and allowing Landlord and said first mortgage holder, or either of them, ten (10) days in the event of a default which may be cured by the payment of money, or in the event of a non-monetary default thirty (30) days after date of such notice to cure such default in a reasonable period of time in addition thereto if circumstances are such that default cannot reasonably be cured within said thirty (30) days period.
The record contains incontrovertible evidence that Gooding’s informed Net that Net’s failure to provide a defense or indemnity was a breach of the lease which could result in termination of the lease. The language of the lease requires that notice of the default be given, not, as the trial court apparently believed, that notice of an intent to terminate be provided. Gooding’s gave notice of the default. Net was afforded ample opportunity to cure the default but failed to do so. Based on the evidence below, the trial court should have declared that Net was guilty of a material breach of the lease giving rise to the right of Gooding’s to terminate the lease.
Finally, because Gooding’s should have prevailed below, it was error to deny the supermarket recovery of prevailing party attorney’s fees as per paragraph 31 of the lease.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
GRIFFIN, C.J., and HARRIS, J., concur.

. The trial court found and we agree that policy obtained by Net did not comply with the terms of the lease in that it contained a $25,000.00 deductible and further provided $1,000,000 coverage in the aggregate rather than per occurrence as the lease required.